IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

THE ESTATE OF ANTHONY MOURADIAN,
by Melissa Mouradian, Special Administrator,

OPINION and ORDER

     Plaintiff,

v.

Case No.  23-cv-167-wmc

JACKSON COUNTY, DUANE M. WALDERA,
SCOTT BOWE, LUCAS JOHNSON, LINDA
KELLER, ASHLEY HAKES, PATRICIA
JACOBSON, FOOTPRINTS IN TIME
MIDWIFERY SERVICES, LLC, JOHN DOES
2-10 AND ABC INSURANCE COMPANY,

     Defendants.

---

This case involves the suicide of a pretrial detainee, Anthony Mouradian, while in custody at the Jackson County Jail in 2020.  Mouradian's estate (the "Estate") has since filed a lawsuit against the county, jail employees, and healthcare providers who treated Mouradian.   In its First Amended Complaint, the Estate added Footprints in Time Midwifery Services, LLC ("Footprints") and Patricia Jacobson as defendants, alleging that they, too, violated the decedent's rights under federal and Wisconsin state law.  (Dkt. #26.)  Pending before the court are:  (1) defendants Footprints and Jacobson's motion to dismiss this amended complaint on the grounds that the Estate's claims against them are time-barred; and (2) plaintiff's unopposed motion for leave to file a surreply.  (Dkt. #34 and Dkt. #45.)  With respect to the latter, having considered plaintiff's surreply, the court will grant its motion for leave to file.  As to the former, since the amended complaint does not rule out the *possibility* that it was timely filed as to Footprints and Jacobson because

the Estate exercised reasonable diligence in identifying their roles in decedent's medical care, the court must deny defendants' motion to dismiss.

## ALLEGATIONS OF FACT[1]

Anthony Mouradian was arrested on July 30, 2019.  On his way to the Jackson County Jail, Mouradian asked the transporting officer to open the vehicle's doors so he could commit suicide.  He also requested a pen or pencil so he could stab himself.  At the jail, Mouradian also allegedly informed multiple employees that he was suicidal, and thus, he was placed on suicide watch for approximately a month.  During this time, Mouradian met frequently with Dr. Ashley Hakes, a psychiatrist.  He also saw Patricia Jacobson, an advanced practice registered nurse ("APRN").  Defendant Jacobson -- who had been contracted by the other, newly added defendant Footprints -- provided Mouradian with mental health care services, including medication management and treatment for his major depressive disorder under an agreement between Jackson County and Footprints.

In December of 2019, Mouradian stopped taking one of his prescribed mental health medications, declined to participate in therapy, and refused to eat or drink, reiterating his desire to die.  Two months later, Mouradian again refused to eat or drink, reporting more suicidal ideations *and* a plan to kill himself.  Thus, he was placed back on suicide watch.  Less than a week later, Mouradian was involuntarily committed at the Winnebago Mental Health Institute ("Winnebago") and Sacred Heart Hospital.

---

[1] The court draws the following facts from the Estate's amended complaint.  In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court "accept[s] as true all of the well-pleaded facts in the complaint and draw[s] all reasonable inferences in favor of" the plaintiff. *Jakupovic v. Curran*, 850 F.3d 898, 902 (7th Cir. 2017) (internal citation omitted).

2

Despite warnings by Dr. Hakes that he was still at high risk for suicide, Mouradian was transferred back to the Jackson County Jail on March 18, 2020.   Aware of the confusion surrounding Mouradian's medication, APRN Jacobson prescribed Mouradian a fourth medication -- adding to the three others that he had been prescribed while committed.   Several weeks later, however, Mouradian discontinued his medication once again.   Moreover, on April 14, 2020, jail workers observed him looking for a place where he could tie a towel in his cell.   Dr. Hakes and jail staff were informed of Mouradian's behavior, and jail staff were instructed to monitor him.   The next day, Mouradian also advised Jacobson that he would never tell anyone if he was suicidal or had a plan to take his own life.

Mouradian's mood declined further after the plea hearing in his underlying criminal case.   In early May of 2020, he refused to tell other jail staff if he planned on committing suicide or was experiencing suicidal ideation.   Next, Mouradian refused to attend a therapy session on May 13, 2020.   During a presentencing investigation six days later, it was noted that Mouradian was highly resistant to prescription medications and therapy.   On or about May 22, 2020, Dr. Hakes further told defendant Captain Scott Bowe that although she still hoped to see some improvement in the future, Mouradian had not improved to date. That information was also passed along to jail staff.

On the night of May 27, 2020, Mouradian had bed sheets, towels, and other objects available to him in his cell, which provided him with the means with which to commit suicide.   Consistent with Mouradian being on a 15-minute watch at the time, at 1:21 a.m. on May 28, 2020, Officer Lucas Johnson conducted a "well-being check" of Mouradian.

3

While Mouradian appeared to be sleeping at that time, defendant Johnson did not try to see if he actually was.  Next, according to a timestamp on a jail video recording, Mouradian placed a towel on his cell's bars at 1:28 a.m.; he then got a second towel, and at 1:59 a.m., he tied the towels around his cell door to prevent anyone from opening it.  Finally, at 2:00 a.m., Mouradian tied a bedsheet to the bars, formed a noose, and hung himself.

When Officer Johnson observed an inmate kneeling at 2:13 a.m., he radioed Officer Linda Keller to investigate.  At 2:16 a.m., defendant Keller saw Mouradian was actually hanging in his cell.  Despite backup officers then responding and cutting the towels and bedsheet to gain entry into Mouradian's cell, subsequent rescue efforts were unsuccessful, including chest compressions and attempted use of a defibrillator.  When an ambulance arrived at 2:28 a.m., its occupants took over lifesaving measures and proceeded with Mouradian to the hospital, where he was pronounced dead at 3:12 a.m.

PROCEDURAL HISTORY[2]

On October 24, 2020, Mouradian's estate -- represented by its counsel in this case -- filed a "Notice of Injury or Circumstances" with Jackson County, observing (among other things) that at the time of his death, Mouradian "was under medication for . . . depression and suicidal ideations."  (Dkt. #26-1, at 3.)  On August 24, 2022, the Estate also sent a "Notice of Claim" to Jackson County with substantially similar language.

---

[2] Unless otherwise indicated below, the court draws the following facts from the parties' briefing on defendants Footprints and Jacobson's motion to dismiss, plaintiff's amended complaint, and the declaration of attorney Madison Bedder (dkt. #40), as well as accompanying exhibits.

(Dkt. #26-2, at 3.)  Jackson County disallowed the Notice of Claim in full on October 17, 2022 and served the Estate with notice of that denial the following day.

Mouradian's estate filed its initial complaint in this case on March 15, 2023 -- two years, nine months, and 16 days after Mouradian's death -- naming as defendants the following:  Jackson County; Duane M. Waldera; Bowe; Johnson; Keller; Douglas Oates; Hakes; John Does 1-10; and ABC Insurance Company.  John Does 1-10 were described as other "employees, correctional officers or deputies employed by the Jail and/or Jackson County, responsible for the health, safety, security, welfare, and humane treatment of all inmates housed at the Jail," including plaintiff Mouradian.  (Dkt. #1, ¶ 16.)

After the named defendants filed their answers and affirmative defenses, and the parties completed their Rule 26 discovery plan on June 21, 2023, the Estate served its first set of discovery requests on Dr. Hakes and the other defendants associated with Jackson County.  Hakes responded to the discovery requests on July 28, 2023, producing her employment contract with Jackson County.  That same day, the Jackson County defendants produced Mouradian's medical and mental health records, which contained notes from Jacobson's treatment.  Hakes and the Jackson County defendants then submitted their initial disclosures to the Estate on August 11, 2023, identifying Jacobson as someone with discoverable information about Mouradian's suicide.  However, neither Hakes nor the Jackson County defendants identified Footprints in their disclosures.

After further discovery involving Hakes, the Jackson County defendants, and the Wisconsin Department of Corrections, the Estate conducted a 30(b)(6) deposition of Jackson County on August 30, 2023.  The Estate claims to have first learned of Footprints'

5

role in Mouradian's alleged injury at that deposition.  Counsel for the Jackson County defendants also agreed to produce additional, responsive documents after that deposition.

On October 2, 2023, based on outstanding responses to the Estate's discovery requests, a stipulation was entered into between the parties to extend the time in which the Estate could amend its pleadings until November 15, 2023.  The Jackson County defendants made their supplemental discovery production on October 11, 2023.  At Dr. Hakes' deposition the next day, she disclaimed any role in Mouradian's medication management.

Counsel for the Estate requested the contract between Jackson County and Footprints/Jacobson on October 16, 2023, and the Estate filed its First Amended Complaint on November 10, 2023.  In addition to adding Footprints and Jacobson as defendants, the amended complaint supplemented various counts with new factual allegations and added breach of contract and statutory claims.  Defendants Footprints and Jacobson -- who were not parties to the stipulation regarding amended pleadings -- were served with notice of the amended complaint on December 5, 2023, three years, six months, and eight days after Mouradian's death.

OPINION

In order to survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  *O'Boyle v. Real Time Resolutions, Inc.*, 910 F.3d 338, 342 (7th Cir. 2018) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  When reviewing a motion to dismiss, the court must accept all

well-pleaded, factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *Alarm Detection Sys., Inc. v. Vill. of Schaumburg*, 930 F.3d 812, 821 (7th Cir. 2019).

As this court has emphasized on numerous occasions, the motion to dismiss phase of proceedings "is not an opportunity for the court to find facts or weigh evidence." *My Health, Inc. v. Gen. Elec. Co.*, No. 15-cv-80-jdp, 2015 WL 9474293, at *2 (W.D. Wis. Dec. 28, 2015). Indeed, district courts generally "cannot consider evidence outside the pleadings to decide a motion to dismiss without converting it into a motion for summary judgment." *Jackson v. Curry*, 888 F.3d 259, 263 (7th Cir. 2018). As an exception to this general rule, however, courts may consider "information that is subject to proper judicial notice." *Tobey v. Chibucos*, 890 F.3d 634, 648 (7th Cir. 2018) (citation omitted).

In particular, defenses based on applicable statutes of limitations are rarely resolved at the motion-to-dismiss stage because "a complaint need not anticipate and overcome affirmative defenses, such as the statute of limitations." *Amin Ijbara Equity Corp. v. Vill. of Oak Lawn*, 860 F.3d 489, 492 (7th Cir. 2017). Crucially, "[a]s long as there is a conceivable set of facts, consistent with the complaint, that would defeat a statute-of-limitations defense, questions of timeliness are left for summary judgment (or ultimately trial), at which point the district court may determine compliance with the statute of limitations based on a more complete factual record." *Sidney Hillman Health Ctr. of Rochester v. Abbott Lab'ys, Inc.*, 782 F.3d 922, 928 (7th Cir. 2015). Put another way, a complaint can only be dismissed as untimely where the facts alleged in the complaint establish an "impenetrable" statute of limitations defense. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1086 (7th Cir. 2008). Nonetheless, dismissal *is* appropriate where "the plaintiff pleads himself out of court by

alleging facts sufficient to establish the complaint's tardiness." *Cancer Found., Inc. v. Cerberus Cap. Mgmt., LP*, 559 F.3d 671, 674–75 (7th Cir. 2009).

In this case, plaintiff alleges ten causes of action against defendants Footprints and Jacobson.  Six of plaintiff's claims -- for wrongful death, intentional infliction of emotional distress, negligence, cruel and unusual punishment, and breach of contract -- sound in Wisconsin common law.  The remaining four claims -- for deliberate indifference in violation of the Fourteenth Amendment and a violation of the Americans with Disabilities Act ("ADA") -- sound in federal law.  (Dkt. #26 at ¶¶ 86-117, 135-142, 149-157, 170-177, 180-186, 193-211.)  The court will address the two varieties of claims separately, except for Count V of the amended complaint alleging the defendants' infliction of cruel and unusual punishment on Mouradian in violation of the Wisconsin Constitution which, at plaintiff's request, the court will dismiss.  (Dkt. #37, at 12.)

I.     **State Law Claims**

The statute of limitations that governs actions relating to a health care provider's treatment or omissions in treatment arises from Wis. Stat. § 893.55(1m), stating in relevant part that:

> Except as provided by subs. (2) and (3), an action to recover damages for injury arising from any treatment or operation performed by, or from any omission by, a person who is a health care provider, regardless of the theory on which the action is based, shall be commenced within the later of:
>
> (a) Three years from the date of the injury, or
>
> (b) One year from the date the injury was discovered or, in the exercise of reasonable diligence should have been discovered, except that an action may not be commenced

under this paragraph more than 5 years from the date of
the act or omission.

The parties agree that this statute applies to plaintiff's tort and contract claims alike (dkt. #37, at 5 and dkt. #44, at 11-12) under controlling Wisconsin law.[3] *Estate of Kohls v. Brah*, 57 Wis. 2d 141, 144, 203 N.W.2d 666 (1973). The parties differ, however, as to *when* this statute of limitations started running as to defendants Footprints and Jacobson. Defendants maintain that the Estate discovered the injury -- Mouradian's suicide -- at the time it occurred, meaning that the statute of limitations expired three years afterwards, on May 28, 2023. In contrast, plaintiff contends that the statute of limitations was tolled as to defendants Footprints and Jacobson until, at earliest, July 28, 2023, when the Estate says it first discovered Jacobson's involvement in Mouradian's care, meaning that the Estate's claims against them would be timely under Wis. Stat. § 893.55(1m)(b) (although not under Wis. Stat. § 893.55(1m)(a)).

Plaintiff is correct that Wisconsin generally follows the "discovery rule" for determining the date on which the cause of action accrued, for instances where "negligence and a resulting injury do not occur simultaneously." *S.J.D. v. Mentor Corp.*, 159 Wis. 2d 261, 265, 463 N.W.2d 873 (1990) (citing *Hansen v. A.H. Robins Co., Inc.*, 113 Wis. 2d 550, 560, 335 N.W.2d 578 (1983)). In such cases, "the statute of limitations begins to run when the potential plaintiff discovers the injury, or in the exercise of due diligence

---

[3] Federal courts exercising supplemental jurisdiction over state law claims are obligated to follow the applicable substantive state law, including statutes of limitations. *Felder v. Casey*, 487 U.S. 131, 151 (1988); *Guaranty Trust Co. v. York*, 326 U.S. 99, 109-10 (1945). Statutes of limitations are also considered substantive under Wisconsin law. *Betthauser v. Med. Prot. Co.*, 172 Wis. 2d 141, 149, 493 N.W.2d 40 (1992).

should have discovered the injury." *Id.* at 265-66 (citing *Hansen*, 113 Wis. 2d at 560). Thus, the cause of action only accrues when the plaintiff "discovers both the nature of his or her injury *and* its cause"; and "the relationship between the injury and its cause [is] more than a layperson's hunch or belief." *Id.* at 266 (citing *Borello v. U.S. Oil Co.*, 130 Wis. 2d 397, 406-07, 412, 388 N.W.2d 140 (1986) (emphasis added)). This rule protects plaintiffs where a lapse exists between injury and the discovery of the facts necessary to alert them to their injury, its cause, or the facts underlying the wrong committed against them.[4] *Hansen*, 113 Wis. 2d at 560.

Under the discovery rule, the statute of limitations starts running when the plaintiff has sufficient evidence that an identified person committed a wrong. *Pritzlaff v. Archdiocese of Milwaukee*, 194 Wis. 2d 302, 315-16, 533 N.W.2d 780 (1995); *see also Christ v. ExxonMobil Corp.*, 2015 WI 58, ¶ 5, 362 Wis. 2d 668, 866 N.W.2d 602 (discovery rule permits accrual of wrongful death claims to occur after decedent's death). Consequently, a tort-based claim begins to accrue "when the identity of the defendant is discovered." *Spitler v. Dean*, 148 Wis. 2d 630, 637-38, 436 N.W.2d 308 (1989). However, whether a claim has accrued based on what a plaintiff knew or should have known is a question that

---

[4] Neither party raised the possibility that the Estate might be entitled to equitable tolling of the statute of limitations for the period it conducted Doe discovery. *Herrera v. Cleveland*, 8 F.4th 493, 499 (7th Cir. 2021). If "despite the exercise of reasonable diligence, [a plaintiff] cannot discover his injurer's (or injurers') identity within the statutory period, he can appeal to the doctrine of equitable tolling to postpone the deadline for suing until he can obtain the necessary information." *Sidney Hillman*, 782 F.3d at 930 (citations omitted). Accordingly, plaintiff must show that it was diligent in pursuing the claim and that an extraordinary circumstance outside of its control prevented it from being able to file a timely complaint. *Menominee Indian Tribe of Wisconsin v. United States*, 577 U.S. 250, 255-57 (2016). However, because the decision to apply equitable tolling is fact-dependent, it is not generally appropriate at the motion to dismiss stage. *Socha v. Pollard*, 621 F.3d 667, 672 (7th Cir. 2010). At any rate, "equitable tolling is an extraordinary remedy and so is rarely granted." *Obriecht v. Foster*, 727 F.3d 744, 748 (7th Cir. 2013) (cleaned up).

needs to be addressed with respect to *each* specific defendant.  *E.g., John Doe 1 v. Archdiocese of Milwaukee,* 2007 WI 95, ¶ 2, 303 Wis. 2d 34; 734 N.W.2d 827 (finding different statutes of limitations applied to different defendants being sued over claims arising from common set of facts); *Baldwin v. Badger Mining Corp.*, 2003 WI App 95, ¶¶ 11-20, 264 Wis. 2d 301, 663 N.W.2d 382 (same).

While statutes of limitations can begin to accrue at different times for different defendants as to the same claims in the same case, that depends on whether the plaintiff exercised reasonable diligence in discovering each defendant's role.  *Jacobs v. Nor-Lake, Inc.*, 217 Wis. 2d 625, 636, 579 N.W.2d 254 (Ct. App. 1998).  "Reasonable diligence" means that a plaintiff must be as diligent "as the great majority of persons would [be] in the same or similar circumstances."  *Spitler*, 148 Wis. 2d at 638 (citing *Hilker v. Western Automobile Ins. Co.*, 204 Wis. 1, 15, 231 N.W. 257, 235 N.W. 413 (1931) (opinion on reconsideration)).  "Plaintiffs may not close their eyes to means of information reasonably accessible to them and must in good faith apply their attention to those particulars which may be inferred to be within their reach."  *Id.* (citing *Kanack v. Kremski*, 96 Wis. 2d 426, 432, 291 N.W.2d 864 (1980)).  Whether a plaintiff exercised reasonable diligence in discovery is also generally a question of fact, and therefore, better suited for summary judgment, although resolution at the motion to dismiss stage may be appropriate when the facts are undisputed and only one reasonable inference can be drawn from those facts.  *John Doe 1*, 2007 WI 95, ¶ 53; *Dakin v. Marciniak*, 2005 WI App 67, ¶ 14, 280 Wis. 2d 491, 695 N.W.2d 867.

The question before the court is when the Estate had or should have had an objective basis for determining that defendants Footprints and Jacobson played a role in Mouradian's care and alleged injury, and whether that date is readily discernible from the face of plaintiff's amended complaint.  Defendants contend the Estate "knew or should have known of Jacobson's involvement in Mouradian's care within the 3-year statute of limitations" from the date of injury because the level of factual detail in both the Estate's initial and amended complaints gives rise to an inference that "plaintiff had some records available to them relative to Mouradian's medications."  (Dkt. #44 at 8-9.)  Defendants also point to the "undisputed fact that no one other than Jacobson was responsible for administering medications to Mouradian."  (*Id.* at 9.)  However, at this stage, plaintiff argues that defendants Footprints and Jacobson:  (1) lack *any* evidence that the Estate was aware or should have been aware of their identities and role in Mouradian's care before the initial complaint was filed in March of 2023; and (2) flatly ignore a sworn statement from plaintiff's counsel that the Estate only obtained Mouradian's medical records in July of 2023.  (Dkt. #46 at 2.)  The court agrees.

Regardless, while plaintiff's amended complaint now alleges that Jacobson and Footprints played a direct role in Mouradian's treatment, it does *not* detail on its face *when* someone in the Estate's position would have had an objective basis for determining that either played a role in causing Mouradian's injuries, the extent of those injuries, or the wrongs either arguably committed.  Accordingly, this is not a case where dismissal on statute of limitations grounds is appropriate at the pleading stage.  *See Andonissamy v. Hewlett-Packard Co.*, 547 F.3d 841, 847 (7th Cir. 2008) ("A statute of limitations defense,

while not normally part of a motion under Rule 12(b)(6), is appropriate where 'the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense, such as when a complaint plainly reveals that an action is untimely.'" (quoting *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005))).

In addition, there is *no* indication on the face of the amended complaint that the Estate (as opposed to the decedent) failed to exercise reasonable diligence in determining the role that defendants Footprints and Jacobson allegedly played in causing Mouradian's death. Although defendants contend that "the only reasonable inference" from the face of plaintiff's initial and amended complaints is that the Estate had "some" of Mouradian's medical records within the three-year statute of limitations, there is at this point (at least for the court) no basis to conclude that the facts alleged in the amended complaint entirely foreclose the possibility that the Estate only learned about *Jacobson's and Footprints'* role in Mouradian's care later. Thus, taking the Estate's contention as true, as the court must at the pleading stage, plaintiff could be entitled to rely on Wisconsin's discovery rule to toll the statute of limitations until their role in the injury was or should have been discovered. *See Tamayo*, 526 F.3d at 1086 (statute of limitations defense must be "impenetrable" on the facts alleged).

As for the two cases that defendants Footprints and Jacobson cite for the proposition that the Estate lacked reasonable diligence in determining the identities of all of Mouradian's mental health care providers, both were resolved on a *more fulsome factual record at summary judgment*, at which point it was *undisputed* that plaintiffs could have connected the defendants with the claimed violations well before the three-year statute of limitations

had run.  As a result, the defendants in those cases successfully invoked the statute of limitations to obtain dismissal of the claims against them.  *See Groom v. Professionals Ins. Co.*, 179 Wis. 2d 241, 246-48, 507 N.W.2d 121 (Ct. App. 1993) (plaintiff received medical records three months after decedent's death); *Awve v. Phys. Ins. Co.*, 181 Wis. 2d 815, 820-21, 512 N.W.2d 216 (Ct. App. 1994) (plaintiff's expert identified defendant physician's alleged negligence in decedent's care 26 months after his death).

By way of contrast, the most defendants here can muster is that the amended complaint and its attachments prove that:  (1) the Estate had some awareness of Mouradian's medical treatment plan at the time the initial complaint was filed; and (2) the Estate had retained counsel by October of 2020.  (Dkt. #26, at 11-12 and Dkt. #44, at 11.)  Given the lack of any alleged facts in the amended complaint as to *how* or *when* the Estate learned about Jacobson's and Footprints' alleged roles in Mouradian's mental health care -- let alone any reasonable inferences that can be drawn from them, especially when these inferences must be construed in the Estate's favor -- the court is simply unable to find (and certainly is not led to the inevitable conclusion) that the Estate failed to exercise reasonable diligence to access information within its reach.  In short, this is not a case where "the plaintiff pleads himself out of court by alleging facts sufficient to establish the complaint's tardiness."  *Cancer Found., Inc.*, 559 F.3d at 674–75.

If anything, the sheer volume of supporting evidence that the parties have filed, along with their briefing on the motion to dismiss, highlight the remaining material factual disputes bearing on the Estate's knowledge, making dismissal on the face of the complaint wholly inappropriate.  Although the court could convert defendants' motion to dismiss

into a motion for summary judgment -- as the trial court in *Awve* did -- given the parties' submission of evidence outside the pleadings, the decision to do so (or not) lies squarely within the court's discretion.  *Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998). Regardless, the development of additional factual evidence is obviously required to determine precisely when *and* how the Estate had an objective basis for assessing defendants Footprints' and Jacobson's role in causing the decedent's injuries.  *Cf. In re Smith & Nephew Birmingham Hip Resurfacing (BHR) Hip Implant Prods. Liab. Litig.*, No. 1:17-md-2775, 2018 WL 6067505, at *10 (D. Md. Nov. 19, 2018) (requiring additional factual inquiry to determine when the cause of action accrued).

Considering only the allegations in plaintiff's amended complaint, as the court must at the motion to dismiss stage, defendants Footprints and Jacobson have simply failed to prove as a matter of law that plaintiff's pleading defeats its reliance on Wisconsin's discovery rule to name either defendant timely.  Of course, defendants are free to renew their statute of limitations defense to the claims under Wisconsin law at summary judgment, should they uncover additional evidence or legal authority to support their arguments.

## II.   Federal Law Claims

Claims brought under 42 U.S.C. § 1983 are also governed by the statute of limitations for personal-injury claims in the state where the plaintiff's injury occurred, here Wisconsin.  *Neita v. City of Chicago*, 830 F.3d 494, 498 (7th Cir. 2016) (citations omitted). Because the ADA does not contain a limitations period either, "the most appropriate state

limitations period applies" to claims brought under that statute as well. *Castelino v. Rose-Hulman Inst. of Tech.*, 999 F.3d 1031, 1037 (7th Cir. 2021) (citations omitted).

Defendants Footprints and Jacobson initially argued that plaintiff's amended complaint improperly named them by failing to plead facts relating back to the original pleading as required by Fed. R. Civ. P. 15(c). (Dkt. #35, at 8-11.) However, the "relation back doctrine" does not apply in circumstances where, as here, the identity of a defendant was unknown. *Donald v. Cook Cnty. Sherriff's Dept.*, 95 F.3d 548, 560-61 (7th Cir. 1996). Thus, as plaintiff correctly contends, Wisconsin's discovery rule applies to the Estate's federal claims as well. (Dkt. #37, at 9-10.) And although defendants now acknowledge that the discovery rule *is* relevant to plaintiff's federal claims, they still contend that the Estate failed to exercise reasonable diligence in identifying them under that rule. (Dkt. #44, at 12.)

As with the state law claims discussed above, however, it would be premature to dismiss these federal law claims against defendants Footprints and Jacobson based on the allegations in plaintiff's amended complaint, as reinforced by a number of material facts remaining in dispute.

ORDER

IT IS ORDERED that:

1) Plaintiff's motion for leave to file a surreply to defendants' motion to dismiss (dkt. #45) is GRANTED.

2) Defendants Footprints in Time Midwifery Services, LLC and Patricia Jacobson's motion to dismiss (dkt. #34) is DENIED.

3) Count V of the First Amended Complaint, plaintiff's cruel and unusual punishment claim arising under the Wisconsin Constitution, is DISMISSED at plaintiff's request.

Entered this 18th day of April, 2024.

BY THE COURT:

/s/

_____

WILLIAM M. CONLEY
District Judge